UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CITIMORTGAGE, INC., | Case No. 2:16-CV-398 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| CORTE MADERA HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff CitiMortgage, Inc.'s ("Citi") motion for summary judgment. (ECF No. 30). Defendant Corte Madera Homeowners Association (the "HOA") (ECF No. 34) and defendants/counterclaimants Susan Patchen ("Patchen") and the Eagle and the Cross LLC ("Eagle" and collectively, with Patchen, as "counterclaimants") (ECF No. 35) filed responses, to which Citi replied (ECF No. 39).

Also before the court is counterclaimants' motion for summary judgment. (ECF No. 31). Citi filed a response (ECF No. 36), to which counterclaimants replied (ECF Nos. 42, 44).

**I.   Facts**

This case involves a dispute over real property located at 2517 Danborough Court, Unit 106, Las Vegas, Nevada 89106 (the "property"). On June 3, 2006, Kathy J. Horton refinanced the property by way of a loan in the amount of $120,100.00, which was secured by a deed of trust recorded June 13, 2006. (ECF No. 1).

The deed of trust was assigned to Bank of America Home Loans via an assignment of deed of trust recorded December 24, 2009. (ECF No. 1). The deed of trust was assigned to Citi via an assignment of deed of trust recorded June 26, 2013. (ECF No. 1). A corrective assignment of

deed of trust was recorded on August 8, 2014, correcting Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP ("BANA") in place of Bank of America Home Loans. (ECF No. 1).

On July 2, 2013, defendant Nevada Association Services, Inc. ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,649.22. (ECF No. 1). On October 11, 2013, NAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $2,955.10. (ECF No. 1).

On November 11, 2013, BANA requested a ledger from the HOA/NAS identifying the superpriority amount allegedly owed to the HOA. (ECF No. 1). The HOA/NAS allegedly refused to provide a ledger. (ECF No. 1).

On April 18, 2014, NAS recorded a notice of trustee's sale, stating an amount due of $4,399.56. (ECF No. 1). On May 16, 2014, Patchen purchased the property at the foreclosure sale for $11,100.00. (ECF No. 1). A trustee's deed upon sale in favor of Patchen was recorded May 19, 2014. (ECF No. 1).

Thereafter, Patchen quitclaimed her interest in the property to Eagle via a quitclaim deed recorded March 18, 2015. (ECF No. 1).

On February 26, 2016, Citi filed the underlying complaint, alleging four causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against NAS and the HOA; (3) wrongful foreclosure against NAS and the HOA; and (4) injunctive relief against Eagle. (ECF No. 1).

On May 2, 2016, counterclaimants filed a counterclaim against Citi and third-party complaint against Mortgage Electronic Registrations Systems, Inc. ("MERS") for quiet title and injunctive relief. (ECF No. 19).[1]

---

[1] Counterclaimants filed a "third-party complaint" seeking to quiet title against third-party defendant MERS. (ECF No. 19 at 20–23). MERS has not been served with the third-party complaint. Moreover, Counterclaimants did not have leave of court to include a third-party complaint in their amended answer on May 2, 2016. Fed. R. Civ. P. 14(a)(1). Further, Counterclaimants' "third-party complaint" is not a proper third-party complaint. *See* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").
Accordingly, counterclaimants' third-party complaint will be stricken. *See e.g.*, *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (holding that district courts have inherent power to control their own dockets, including the power to strike items from the docket).

In the instant motions, Citi and counterclaimants move for summary judgment. (ECF Nos. 30, 31). The court will address each as it sees fit.

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not

consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

## III. Discussion[2]

### A. Claims (2) through (4) & Counterclaim (2)

As an initial matter, the court dismisses, without prejudice, claims (2) through (4) of Citi's complaint (ECF No. 1) and claim (2) of the counterclaim (ECF No. 19).

Claims (2) and (3) of Citi's complaint (ECF No. 1) are dismissed without prejudice for failure to mediate pursuant to NRS 38.330. *See, e.g.*, Nev. Rev. Stat. § 38.330(1); *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555 (Nev. 2013).

Citi argues that NRS 38.300 *et seq.* does not apply because BANA submitted a demand for mediation on November 4, 2015, but NRED failed to schedule mediation within 60 days. (ECF No. 1 at 3). The court disagrees.

Subsection (1) of NRS 38.310 sets forth prerequisites for commencing a civil action and provides, in relevant part:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1). Subsection (2) continues by stating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." Nev. Rev. Stat. § 38.310(2). Subsection (1) of NRS 38.330 states that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim." Nev. Rev. Stat. § 38.330(1).

While Citi claims that BANA submitted a request for mediation, the parties have not participated in mediation. Moreover, nothing in NRS 38.330 provides that NRED's failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place the burden on

---

[2] The court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 30-1); corporation assignment of deed of trust (ECF No. 30-2); corrective assignment of deed of trust (ECF No. 30-3); assignment of deed of trust (ECF No. 30-4); notice of delinquent assessment lien (ECF No. 30-5); notice of default and election to sell (ECF No. 30-6); notice of foreclosure sale (ECF No. 30-7); and foreclosure deed (ECF No. 30-9). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

NRED to complete mediation within a specified period of time. Thus, Citi has not exhausted its administrative remedies and must mediate certain claims prior to initiating an action in court.

Further, NRS 38.350 expressly tolls the statute of limitations applicable to Citi's claims that are subject to mediation under NRS 38.310. Specifically, NRS 38.350 provides that "[a]ny statute of limitations applicable to a claim described in NRS 38.310 is tolled from the time the claim is submitted to mediation . . . until the conclusion of mediation . . . of the claim and the period for vacating the award has expired." Nev. Rev. Stat. § 38.350. Therefore, Citi's claims are not prejudiced by the statute's requirement that the parties participate in mediation prior to initiating an action in court.

Claim (4) of Citi's complaint (ECF No. 1) and claim (2) of the counterclaim (ECF No. 19) are dismissed without prejudice because the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

### B. Claim (1)[3]

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*,

---

[3] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2013–14, when the events giving rise to this litigation occurred.

918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives a HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

### *1. Deed Recitals*

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[4] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[4] The statute further provides as follows:

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, counterclaimants have provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale. (ECF No. 31). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle counterclaimants to success on their quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether Citi has demonstrated sufficient grounds to justify setting aside the

---

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

### *2. Due Process*

Citi argues that the HOA lien statute is facially unconstitutional because it does not mandate notice to deed of trust beneficiaries. (ECF No. 30 at 4–7). Citi further contends that any factual issues concerning actual notice are irrelevant pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"). (ECF No. 30 at 7). While Citi contends that the entirety of NRS 116.3116 is unconstitutional and void, the only portion of the statute that "facially violated mortgage lenders' constitutional due process rights" was the "opt-in" notice scheme. *Bourne Valley*, 832 F.3d at 1160.

To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Citi has satisfied the first element as a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, Citi fails on the second prong.

Citi has failed to allege a denial of its procedural protections. (*See* ECF No. 30 at 11–12). Rather, Citi alleges a denial of BANA's due process rights. (ECF No. 1; *see also* ECF No. 30 at 11 ("[T]he Corte Madera's sale violated **BANA's** due process rights as applied to the facts of this case." (emphasis added))). Citi cannot litigate BANA's due process rights, and cannot litigate in the absence of its own disadvantage. *See also Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Furthermore, a grant of summary judgment on the issue of due process is inappropriate insofar as defendants' actions seem to satisfy due process as they were "reasonably calculated,

James C. Mahan
U.S. District Judge

- 9 -

under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

There is evidence that both BANA and Citi have received actual notice of the foreclosure sale, specifically return receipts for certified mailing to Citi regarding the notice of default and notice of sale. (ECF No. 31-1 at 79, 81, 93); (*see also* ECF Nos. 30-1 at 3; 30-8 at 5–6; 35 at 4) ("The [n]otice of [f]oreclosure [s]ale was [. . .] mailed to all required parties **including [Citi]**.") (emphasis added)). Moreover, Citi does not dispute receiving actual notice of the foreclosure sale, but merely that "[a]ctual notice does not change the analysis." (ECF No. 30 at 7); *see also* (ECF No. 36 at 3).

### *3. Rejected Tender*

In the instant motion, Citi argues that BANA's letter tendering payment on November 11, 2013, to NAS preserved the seniority of Citi's deed of trust. (ECF No. 30 at 8–9).

The court disagrees. BANA did not tender the amount sent forth in the notice of default, which stated an amount due of $2,955.10. (ECF Nos. 1 at 4; 30 at 3, 9).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

Citi asserts that "there can be no dispute Corte Madera's super-priority lien was limited to nine months of common assessments and not a penny more." (EF No. 30 at 8). To the contrary, the superpriority lien portion consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other

HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162."). Citi merely presumed, without adequate support, that BANA's offer to pay would satisfy the superpriority lien. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of default recorded, set forth an amount due of $2,955.10. (ECF Nos. 1 at 4; 30-6). Rather than tendering the $2,955.10 due so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected to contact NAS and submit merely an "offer" to pay "the nine months' of common assessments pre-dating the [Notice of Default]" predicated upon "adequate proof of the same by the HOA." (ECF No. 30-8 at 6). This course of action was based on BANA's unwarranted assumption that the amount stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BANA paid the amount set forth in the notice of default ($2,955.10), the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

After failing to use the legal remedies available to Citi/BANA to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—Citi now seeks to profit from both its predecessor's and its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby."); *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great

injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day.").

Citi presumes that BANA's "offer" to pay constitutes a "tender" of payment by citing to *Fresk v. Kraemer*, 99 P.3d 282, 286–87 (Or. 2004), *Guthrie v. Curnutt*, 417 F.2d 764, 765–66 (10th Cir. 1969), and *Ebert v. W. States Refining Co.*, 337 P.2d 1075, 1077 (Nev. 1959), for the proposition that an offer of payment, where the party is ready, willing, and able to pay, is satisfactory even where that offer is conditional. (ECF No. 30 at 9).

BANA's correspondence with the HOA could not constitute tender. Citi contends that "conditions are allowed **if the tendering party has the right to insist to such conditions**." (ECF No. 30 at 9) (emphasis added). BANA did not have the right to condition its tender. BANA, in order to preserve its interest in the property, was obligated to pay the deficiency in payment described by the notice of default. Nev. Rev. Stat. § 116.31162(1)(b).

Based on the foregoing, Citi has failed to sufficiently establish that it tendered a sufficient amount prior to the foreclosure sale so as to render Patchen's or Eagle's titles subject to Citi's deed of trust.

### *4. Commercial Unreasonability*

Citi contends that judgment in its favor is appropriate because the sale of the property for less than 10% of its fair market value is grossly inadequate as a matter of law. (ECF No. 30 at 13–14). Citi further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 30 at 13).

Section 116.3116 of the NRS codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[5]

---

[5] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which

James C. Mahan
U.S. District Judge

- 12 -

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite Citi's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche,*

---

was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

*LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).

Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530. Absent a showing of fraud, unfairness, or oppression the court need not consider whether the sale price was grossly unreasonable.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge-Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, Citi fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale.

First, Citi argues that the HOA's covenants, conditions, and restrictions ("CC&Rs") "necessarily chilled bidding and resulted in unfairness." (ECF No. 30 at 15). This argument fails because Citi misrepresents the content of the CC&Rs.

The HOA's CC&Rs make no representation that "its foreclosure would not affect, defeat, render invalid, or impair the lien of any [m]ortgage, deed of trust or other lien on any [u]nit taken in good faith and for value." (ECF No. 30 at 15). In fact, the CC&Rs hold only that "no amendment, violation, breach of, or failure to comply with any provision of this [d]eclaration and no action to enforce any such provision shall affect, defeat, render invalid, or impair the lien of any [m]ortgage, deed of trust or other lien on any [u]nit taken in good faith and for value." (ECF No. 30-12 at 35).

The foreclosure proceeding in this case derives from NRS Chapter 116, not from the CC&Rs. Nev. Rev. Stat. § 116.31162. Citi's reading of the CC&Rs is inconsistent with the

holding in *SFR Investments*. 334 P.3d at 419; *see also 7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.*, 979 F. Supp. 2d 1142, 1152–53 (D. Nev. 2013). Moreover, Citi does not present evidence of bidders being dissuaded "from offering a commercially reasonable price" such that bidding on the property was, in fact, "chilled." (ECF No. 30 at 15–16).

Furthermore, the holding in *ZZYZZX2 v. Dizon* had a showing of affirmative misrepresentation; no such misrepresentation was made directly to Citi by the HOA or its trustee. No 13-cv-1307-JCM-PAL, 2016 WL 1181666, at *5 (D. Nev. Mar. 25, 2016) ("The association sent a letter to Wells Fargo and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien.").

Second, Citi relies on its repeated assertion that BANA tendered the superpriority amount to show fraud, unfairness, or oppression. However, as the discussed in the previous section, the amount due on the date of BANA's tender was set forth in the notice of default, specifically, $2,955.10. (ECF No. 30-8 at 6). Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BANA chose to demand a recalculation. (ECF No. 30-8 at 6).

Citi's commercial reasonability argument fails as a matter of law as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 n.2 (Nev. App. Apr. 17, 2017) ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### *5. Bona Fide Purchaser Status*

Because the court has concluded that Citi failed to properly raise any equitable challenges to the foreclosure sale, the court need not address Citi's argument that Patchen was not a bona fide purchaser for value. *See id.* at *3 n.3 (citing *Shadow Wood,* 366 P.3d at 1114).

### *6. Retroactivity*

Citi contends that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 30 at 17–18).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case.

### *7. Bankruptcy Stay*

Citi asserts that the foreclosure sale is invalid because it violated the automatic bankruptcy stay under 11 U.S.C. § 362(a). (ECF No. 1 at 10–11). The alleged violation is the July 2, 2013, recording of the notice of delinquent assessment and the October 11, 2013, notice of default. (ECF No. 1 at 10).

However, according to the complaint, the foreclosure sale did not take place until May 16, 2014—after the borrowers received a discharge in bankruptcy May 30, 2012 and after the bankruptcy case was closed October 17, 2013. (ECF No. 1 at 2, 6).

Thus, the foreclosure sale will not be set aside as it did not violate the automatic bankruptcy stay under 11 U.S.C. § 362(a).

### IV. Conclusion

In light of the aforementioned, the court finds that counterclaimants are entitled to a judgment as a matter of law against Citi on their quiet title claim. Citi has failed to raise a genuine dispute so as to preclude summary judgment in favor of Patchen and Eagle on their quiet title claim. Citi failed to provide evidence to show that the foreclosure sale ought to be set aside, or that its deed of trust survived the foreclosure sale. (*See* ECF No. 30). Nor has Citi established that it is entitled to summary judgment in its favor against counterclaimants, the HOA, or NAS. Citi did not tender any part of the amount provided in the notice of default, as statute and the notice

itself instructed, and did not meet its burden to show that no genuine issues of material fact exist regarding the proper amount of the HOA's lien, a lack of constitutionally sufficient notice, or that the foreclosure sale should be set aside.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Citi's motion for summary judgment (ECF No. 30) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that counterclaimants' motion for summary judgment (ECF No. 31) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that counterclaimants' third-party complaint (ECF No. 19) be, and the same hereby is, STRICKEN FROM THE RECORD.

The clerk is instructed to enter judgment accordingly and close the case.

DATED June 14, 2017.

_____
UNITED STATES DISTRICT JUDGE